# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2534 | **DATE** | 12/17/2004 |
| **CASE TITLE** | | Tidwell vs. Briley | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

*(1)* ☐ Filed motion of [ use listing in "Motion" box above.]

*(2)* ☐ Brief in support of motion due _____.

*(3)* ☐ Answer brief to motion due_____. Reply to answer brief due_____.

*(4)* ☐ Ruling/Hearing on _____ set for _____ at _____.

*(5)* ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

*(6)* ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

*(7)* ☐ Trial[set for/re-set for] on _____ at _____.

*(8)* ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

*(9)* ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

*(10)* ■ [Other docket entry]   The petitioner's petition for a writ of habeas corpus is denied and the case is terminated. The Illinois Attorney General's request to substitute Warden Briley for Warden Page as the named responded is granted. Any pending motion in this case is terminated as moot. Enter Memorandum Opinion and Order.

*(11)* ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

2
number of notices

DEC 20 2004
date docketed

docketing deputy initials

12/17/2004
date mailed notice

Document Number

| MPJ | courtroom deputy's initials | | Date/time received in central Clerk's Office | MPJ6 mailing deputy initials |

UNITED STATES OF AMERICA ex rel. )
CLEOTHER TIDWELL, )
           )
       Petitioner, )
           )
    vs. )     No. 00 C 2534
           )
KENNETH BRILEY, Warden, )
Stateville Correctional Center, )
           )
       Respondent. )

**DOCKETED**
DEC 2 0 2004

## MEMORANDUM OPINION AND ORDER

Cleother Tidwell petitions for a writ of habeas corpus. Originally, the named respondent was James Page, Warden of the Pontiac Correctional Center. The Illinois Attorney General points out that Mr. Tidwell is currently incarcerated at Stateville Correctional Center, of which Kenneth Briley is Warden, and asks that Mr. Briley be substituted as respondent. I grant that request.

### Procedural History

On September 15, 1994, Tidwell was found guilty of kidnapping Linda Gunn by a jury in the Circuit Court of Cook County, Illinois.[1] On January 4, 1995, Tidwell was sentenced to 12 years of incarceration for the offense. The sentence was to be served consecutively after completion of a 55 year sentence on another

---

[1] Mr. Tidwell represented himself before the jury, and has appeared *pro se* ever since, except in connection with his appeal on the merits and on his second petition for post-conviction review when he first asserted his claim of actual innocence.

charge for which he was already incarcerated.[2] Tidwell appealed the kidnapping conviction to the Illinois Appellate Court, alleging as his sole ground for reversal that the trial court erred in denying his motion to suppress evidence. The appellate court affirmed his conviction on May 21, 1996. The Illinois Supreme Court denied a petition for leave to appeal from the appellate court's decision on October 2, 1996.

On December 2, 1996 Tidwell filed a petition for post-conviction relief in the Cook County Circuit Court on grounds of ineffective assistance of appellate counsel and abuse of discretion by the trial court in denying his motion to suppress. On January 17, 1997, a judge of that court, noting that the asserted grounds for relief had already been the subject of Tidwell's earlier appeal, summarily dismissed the post-conviction petition as frivolous and patently without merit, stating that Tidwell's claims were barred by the doctrine of *res judicata* and waiver. On January 19, 1999, the Illinois Appellate Court affirmed the summary dismissal of post-conviction petition.

Tidwell filed a petition for writ of habeas corpus in this court on April 20, 2000. In that petition, he argued that he was subjected to an illegal search and seizure when the Chicago police department searched his residence without a search warrant or his

---

[2]    The pending petition seeks no relief from the earlier conviction.

2

consent; that an instruction given to the jury was improper; and that he was denied his rights under the Confrontation Clause, U. S. Constitution, Amend. VI, when the trial judge refused to let him cross-examine the complaining witness about her two prior convictions for theft. On August 15, 2000, Tidwell was granted leave to withdraw his habeas corpus petition.

On August 21, 2000, Tidwell filed another post-conviction petition in the Circuit Court of Cook County claiming actual innocence. The petition was dismissed by that court for being untimely, an improper successive petition, frivolous and patently without merit. Tidwell then appealed the dismissal to the Illinois Appellate Court, which affirmed the dismissal. Tidwell then filed a petition for rehearing, and on June 3, 2003 the Illinois Apellate Court, having reviewed the record, issued a modified opinion and order detailing the evidence adduced at Tidwell's trial and reaffirmed the dismissal of the August 2000 petition. Tidwell applied to the Illinois Supreme Court for leave to appeal from the June 3,2003 order. On October 7, 2003, his petition for leave to appeal was denied.

### The Petition for Habeas Corpus

On June 21, 2004, Tidwell filed *pro se* a 31-page document entitled "Argument" in this court that I am treating as a supplement to the original petition for habeas corpus. In his most recent pleadings, Tidwell argues that he is claiming "actual

innocence" and that he did not receive due process or a fair trial. In essence, he insists that

1. the trial was "permeated with perjury;"

2. the Assistant State's Attorney committed fraud in her opening statement by "deliberate avoidance of the obvious escape opportunities Linda had;"

3. The transcript reveals that "the story the ASA painted is full of holes, and defies logic, common sense, and life experience."[3]

### The Evidence

Tidwell argued at the trial that no kidnapping occurred but that Gunn called the police and cooperated in his prosecution because she was driven by jealousy and revenge. He argues that Gunn was enraged because he had fathered a child by another woman during a time they lived together. He contends further that she also became upset when she discovered a video tape of Tidwell having sex with one or more other women in her bed, even though previously, with Gunn's apparent consent, he had taped Gunn and himself

---

[3] Tidwell also complains here that he was not allowed to impeach Gunn with her own criminal record. He bases this argument on the trial judge's ruling sustaining objections to the questions: "Weren't you selling drugs out of the house?" and "Doesn't you have a police record in Minnesota?" He has only himself to blame. Had he accepted the counsel the court appointed for him instead of insisting on acting *pro se*, counsel would undoubtedly have attempted to impeach Gunn properly with evidence of her prior convictions, assuming that she had any. The trial judge properly sustained the objections to Tidwell's questions.

engaged in sexual acts. Tidwell did not take the stand but sought to give his version of the facts in his opening statement and closing argument as well as by making statements when he cross-examined Gunn.

In addition to Gunn, the State called several policemen, including the arresting officer and a detective who had been involved in the post-arrest investigation, as well as a man who had allowed Gunn to use a telephone to call the police. Tidwell called as his only witness his mother, through whom he sought to adduce hearsay testimony that Gunn had dealt drugs. By Tidwell's account, no one but his mother told the truth at trial. I will not detail the testimony of witnesses other than Gunn. Suffice it to say that their testimony was not, on its face "permeated with perjury." I recite and abstract some of Gunn's testimony.

Gunn testified that between 2:00 and 2:30 a.m. on the morning of March 21, 1993, she came home from work to her apartment at 7215 South Campbell in Chicago, and was surprised in the dark and frightened by Tidwell who refused to say how he had gained entry. Gunn and Tidwell had previously lived there together in a sexual relationship of several years' duration, but Gunn had terminated their relationship a month or two earlier, and Tidwell no longer had keys to the building or apartment. Tidwell attempted to persuade Gunn to go out for a walk, but she refused. Tidwell took a gun out of his pocket, cocked the trigger, and pointed it at

Gunn's head, stating, "You can either stay here dead or you can go with me alive."

Tidwell took some of Gunn's clothes out of the closet, and they walked to his car which was about a block away. Tidwell drove her to a house at 69th and Elizabeth Streets where he was renting a room. There, he made her say aloud, "how things were going to be now." In response, Gunn told him she was going to have to do things she had previously refused: have sex with other women and other men and anal and group sex. The two went to bed, had sex and then fell asleep. In the morning, Tidwell asked Gunn whether she wanted to go with him. When she told him she would rather not, he told her that he was going to drive to Wisconsin and would be gone all day. He further told her that if she stayed in the room, she would have to be tied up, and she said then that she "guessed" she would go with him.

Before they left Tidwell's room he reloaded his gun and put it in his pocket. They stopped for gas at 55th Street and the Dan Ryan Expresssway. When they got out of the car at the gas station, Tidwell warned her that, "If I tried to do anything that he didn't care about shooting nobody else as well as shooting me." When they arrived in Milwaukee, they went to the home of Tidwell's cousin. Gunn was sick the whole day, and she went into the cousin's living room and fell asleep. Tidwell woke her later, and they returned to his room at 69th and Elizabeth in Chicago. She slept in Tidwell's

room that night and when they awoke, Tidwell asked her if she wanted anything from the store. She told him that she would like an orange. Then he asked her if she would leave if he did not tie her up before he went to the store. She said, yes, she would leave. Tidwell then had her lie on the bed and tied her hands behind her back with twine. He also tied her feet. The twine around her feet was tied to a chain that was connected to the bed. He also gagged her with duct tape.

After Tidwell left Gunn alone in the room, she worked her hands free and then, using matches she found on the floor, burned through the twine that bound her feet. As she was putting on her clothes, she saw that Tidwell had left his gun under her coat. She took the gun with her and went to a barbershop at the corner, which was closed. She banged on the door and asked to be allowed to use the phone so she could call the police. She was admitted, made a call, and a police officer responded, taking her first to her home and then to Holy Cross Hospital. Prior to going to the hospital she witnessed the police escorting Tidwell from the side of the house in which he roomed. After his arrest, she saw Tidwell twice at the County Jail and also sent him a letter.

Tidwell cross-examined Gunn as to her "real reason" for calling the police and cooperating in his prosecution. His questions and the answers they elicited could well have been found by the jury to be more incriminating than exculpatory. In the

course of his examination of Gunn, Tidwell made statements and asked questions which, together with some of Gunn's answers, were as follows.

> Q. Okay. In June of 1991 you found a videotape of me and two other women, X rated and graphic. Do you recall that videotape?
>
> * * *
>
> Q. At this time, we were living together?
> A. You was in the correctional center in jail.
>
> * * *
>
> Q. Isn't it true that there were some people carrying guns that had frequented that apartment regularly looking for me.
>
> * * *
>
> Q. You are aware that the reason I had been avoiding the house was that the police were coming there constantly looking for me?
>
> * * *
>
> Q. . . . did you admit that the police had been frequenting the house looking for me?
> A. Yes, but that had been a while.
>
> * * *
>
> Q. Before we left out of your room, the apartment, the bedroom, wherever we were, didn't I say to you to wipe your dresser down?
>
> * * *
>
> Q. I didn't tell you to wipe any fingerprints off your dresser?
> A. You might have.
>
> * * *
>
> Q. Have you ever known me to carry a gun prior to this date [the date of the abduction]?
> A. Yes.
> Q. Have you ever known me to have a gun in the car?
> A. Yes.
>
> * * *
>
> Q. Now, you stated to the jury that I said that I asked you if I leave you here, would you leave?
> A. Yes, you did.
> Q. While I am gone?
> A. Yes, you had. Yes, you had.
> Q. Okay. Now didn't you tell me to tie you up?
> A. I told you I would not stay there.
> Q. You never told the police you told me to tie you up?
> A. No, I didn't.

Q. So the police made all this up?
                    * * *
Q. You don't recall telling me well, just tie me up real
loose just in something case (sic) happened?
                    * * *
Q. [with regard to a date other than the date of the
offense] Did I force you to let me tie you up that day?
A. I didn't have no choice.
Q. Did I hold a gun on you to see if you could get a
loose?
A. Yes, you had a gun at that time also.
Q. Did I say if you don't let me tie you up I will shoot
you?
A. No, you did not.
Q. I didn't force you to be tied up?
A. I had no choice.
                    * * *

On cross, Gunn also categorically denied that she had been

pressured by the State's Attorney to prosecute or that she had been

motivated by revenge to do so.

On re-direct examination, Gunn testified

Q. And why were you afraid of the defendant at that time
[referring to June 1993 when Gunn wrote a letter to
Tidwell]?
A. I was afraid - I been afraid of the defendant a long
time, not just something that started that week or that
day. Something that had been going on for a couple of
years.
Q. Is that one of the reasons your relationship with the
defendant ended?
A. That is not really how. What made the relationship
ended. What made me able to kind of get away from him
then was through all the different stuff was going on
with the police coming for him and detectives. So that is
the only way I got away from him not being at my house.
It wasn't nothing that I was able to just end with him.
                    * * *

Tidwell then re-crossexamined.

Q. Now are you saying you felt afraid of me that I may do
something to you?
A. I still am.
                    * * *

9

Q. I never told you to stop doing what you were doing
[allegedly selling drugs out of her home] because I was
on parole.
A. No.

## Discussion

Illinois criminal procedure provides several opportunities for a criminal defendant to rectify alleged constitutional errors in the proceedings that led to his conviction. First is the right to a direct appeal from the judgment. However, even on a direct appeal and even if the argument would otherwise have been deemed meritorious, an error must have been timely raised, or it is deemed waived. Second, claims for post-conviction review of alleged constitutional errors may be raised under the Illinois Post-Conviction Hearing Act, 725 ILCS § 5/122-1 et seq. There, too, the issue of timeliness presents a threshold question: issues that could have been raised at an earlier date but were not, are deemed procedurally defaulted.

The jurisdictional and procedural rules that must be followed by district courts in adjudicating habeas corpus petitions that seek relief from state court convictions are set forth in 28 U.S.C. § 2254. The only ground on which such a petition may be entertained is that a person is held in custody in violation of the Constitution or laws or treaties of the United States. The petition may not be granted unless the petitioner has exhausted the remedies available in the state court, or state remedies do not exist, or

circumstances exist that render such process ineffective to protect the petitioner's rights.

## Tidwell's Claims

I turn now to Tidwell's specific claims.

(A) The claim that his motion to suppress was improperly denied was made in his December 1996 petition for post-conviction relief. The claim was also argued on his direct appeal. Tidwell had a full and fair opportunity to litigate that claim in the state courts. Under those circumstances, the allegedly improper denial of the motion to suppress does not support a collateral attack on the conviction. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Cabreras v. Hinsley*, 324 F. 3d 527, 531 (7th Cir. 2003)(*cert. denied*, 540 U.S. 873 (2003)

Title 28 U.S.C. § 2254(d) provides that habeas relief may not be granted unless the state court contravenes or unreasonably applies Federal law or makes a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Reviewing the trial evidence and the law I find that neither of those conditions has been met. I further find that the Illinois Appellate Court conscientiously reviewed the state court record and, in an unpublished, well reasoned and thorough opinion filed January 17, 1997 properly determined that the issue sought to be raised had been raised on direct appeal and was barred by the doctrines of res judicata and waiver.

11

(B) The claim that the jury instruction given on the kidnapping charge was improper has been procedurally defaulted for purposes of habeas review. In an unpublished opinion filed January 19, 1999, the Illinois Appellate Court, despite the fact that it found the issue not to have been raised before and therefore procedurally defaulted, reviewed the record and analyzed the instruction under the "fundamental fairness" rule.[4] It held that the portions of the jury instruction belatedly objected to were actually favorable to the defendant and could not have altered the result in the case, and, therefore, the trial court had been correct in summarily dismissing Tidwell's second petition for post-conviction relief.

(C )Tidwell's actual innocence claim was reviewed *de novo* by the Illinois Appellate Court in connection with his August 21, 2000 post-conviction petition. Tidwell claimed that he was entitled to make the argument because of newly discovered evidence, namely, an affidavit from a prisoner named Kevin Golar which alleged in essence that Gunn had told the affiant in 1993 or 1994 that she had Tidwell arrested despite the fact that he had not done anything.

The Illinois Appellate Court reviewed the entire transcript and concluded,

---

[4] Previously waived constitutional claims may be considered on post-conviction review where fundamental fairness requires it. *People v. Owens*, 129 Ill.2d 303 (1989)

The jury had evidence from which it could have discredited Gunn's testimony, yet it did not. Rather the jury rejected defendant's arguments and theory that Gunn was a liar and brought the charges against the defendant out of revenge. Golar's affidavit does nothing more than again call Gunn a liar. We do not believe that Golar's testimony at defendant's trial would have had any effect on the jury in light of the overwhelming evidence against defendant, including Gunn's testimony, which was corroborated by the testimony of two police officers as well as substantial physical evidence. Accordingly defendant's trial was not so infected with an error that denied him due process. Defendant clearly challenged Gunn's credibility and truthfulness as to the course of events. Because defendant cannot establish prejudice based on Golar's affidavit, we find that the trial court properly dismissed defendant's second post-conviction petition.

I agree with the Illinois Appellate Court's analysis and conclusion. I grant the Illinois Attorney General's request to substitute Warden Briley for Warden Page as the named respondent, and I deny Tidwell's petition for habeas corpus.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: December /2, 2004

13